FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 04, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEANA C.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 2:26-cv-242-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS FOR THE PERIOD BEFORE JANUARY 8, 2025, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Deana C. asks the Court to reverse the portion of the Administrative Law Judge's (ALJ) partially favorable decision that denied Title 2 and Title 16 benefits for the period before January 8,

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

2025. Plaintiff claims she was unable to work during that period due to several physical and mental impairments. Substantial evidence does not support the ALJ's evaluation of the single challenged medical opinion and the ALJ did not provide valid reasons to reject Plaintiff's symptom reports. These errors impacted the nondisability determination. This matter is remanded for further proceedings.

## I. Background

Plaintiff filed her Titles 2 and 16 applications for benefits on July 10, 2023, alleging disability beginning February 2, 2023.[2] She appeared for a hearing before ALJ Jeffrey Raeber in September 2025, at which Plaintiff and a vocational expert testified.[3] Plaintiff testified that she was unable to perform her last several jobs because of recurring ulcerations, swelling, and numbness in her extremities, cellulitis, migraines, depression, and anxiety.[4]

---

[2] Administrative Record (AR) 308, 326.

[3] AR 45–86.

[4] AR 53, 59–65, 70–73, 76–78.

The ALJ issued a partially favorable decision finding Plaintiff disabled as of January 8, 2025, and not disabled before that date.[5] The ALJ determined that Plaintiff's overall functional capacity deteriorated on that date because she presented with multiple red and inflamed lesions on her forearms and abdomen, and she later presented with severe edema and related pain in her legs.[6]

Before January 8, 2025, however, the ALJ found Plaintiff's alleged symptoms were "not fully supported."[7] As to the medical opinions, the ALJ found:

- the reviewing opinion of the State agency medical consultant at the initial level not persuasive, but the reviewing opinions of all other State agency medical consultants persuasive.
- the treating opinion of Sarah Phillips, LICSW, not persuasive.[8]

---

[5] AR 15–31. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[6] AR 27.

[7] AR 24.

[8] AR 26–27.

As to the sequential disability analysis for the period before January 8, 2025, the ALJ found:

- Plaintiff met the insured status requirements through September 30, 2026.
- Step one: Plaintiff engaged in substantial gainful activity only in the second quarter of 2023.
- Step two: Plaintiff had the medically determinable severe impairments of morbid obesity, carpal tunnel syndrome, recurrent lower extremity cellulitis, venous insufficiency, osteoarthrosis, PTSD, anxiety disorder, depressive disorder, and substance addiction disorder.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to perform light work with the following non-exertional limitations:

  She could frequently handle and finger objects bilaterally. Occasionally climb[] . . . ramps or stairs; never climb ladders, ropes, or scaffolds. Frequently stoop, kneel, crouch, and crawl. She could never work in high, exposed places. No work in proximity to moving mechanical parts. No driving or operating machines or

> equipment. She could understand, remember, and carry out simple instructions. She could perform work without a specific production rate pace, such as an assembly line or hourly production quotas. She could make simple work-related decisions. She could have occasional public contact. Occasional interaction with co-workers and supervisors. Superficial contact with others, defined as no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others or being responsible for the safety or welfare of others. She can deal with occasional changes in a routine work setting.

- Step four: Plaintiff could not perform past relevant work.
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as inspector and hand packager, router, and routing clerk.[9]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[10] Plaintiff now appeals to district court.[11]

---

[9] AR 21–30.

[10] AR 1–3.

[11] ECF No. 1.

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[12] Thus, the ALJ must articulate his findings and cite such supporting evidence to permit the court to meaningfully review the ALJ's findings.[13]

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[14] and such error

---

[12] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[13] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[14] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

impacted the nondisability determination.[15] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]

---

[15] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[16] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

## III. Analysis

Plaintiff argues the ALJ committed five errors with respect to the nondisability period by (1) finding she engaged in substantial gainful activity in one quarter of 2023; (2) rejecting Ms. Phillips' opinion in crafting the RFC; (3) failing to conduct an adequate step-three evaluation; (4) rejecting Plaintiff's subjective complaints in crafting the RFC; and (5) not meeting the ALJ's step-five burden. In response, the Commissioner argues no error occurred and that the ALJ's decision is supported by substantial evidence. As is explained below, although the ALJ did not err when evaluating the listings, Plaintiff establishes consequential errors with respect to the ALJ's evaluation of Ms. Phillips' opinion and Plaintiff's subjective complaints.

### A. Step One (Substantial Gainful Activity): The issue is moot.

At step one, "[i]f [the claimant is] working and the work [she is] doing is substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled."[17] To be disabled, the inability to perform

---

[17] 20 C.F.R. §§ 404.1520(b), 416.920(b).

substantial gainful activity must have "lasted or . . . be expected to last for a continuous period of not less than 12 months."[18]

Here, the ALJ found a continuous period of at least 12 months during which Plaintiff did not engage in substantial gainful activity, notwithstanding that there was one quarter of substantial gainful activity. The ALJ then proceeded with the five-step sequential evaluation. Plaintiff's step-one argument, therefore, is moot.

**B. Step Three (Listings): Plaintiff fails to establish error.**

Plaintiff contends the ALJ failed to adequately evaluate whether Plaintiff met or equaled Listings 4.11, 8.09, 11.14, 12.04, 12.06, or 12.15 by giving only conclusory reasons. The Court disagrees.

1. Standard

If a claimant meets or medically equals all criteria of an impairment listed in the regulatory Listing of Impairments, she is considered disabled at step three.[19] "[I]n determining whether a

[18] *Id.* §§ 404.1505(a), 416.905(a).

[19] *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see* 20 C.F.R. pt. 404, subpt. P, App. 1.

claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."[20] The ALJ need not recite the reasons for his step-three determination under the listings portion of the decision so long as the relevant evidence and underlying findings are discussed in the ALJ's decision.[21] Moreover, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude an impairment could meet or equal a listing.[22] Also, the "ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."[23]

---

[20] *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990); *see Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (The ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.").

[21] *Lewis,* 236 F.3d at 513.

[22] *Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir. 1990).

[23] *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

2. Listings, and analysis thereof

*a. Listing 4.11, Chronic venous insufficiency*

Listing 4.11 requires "[c]hronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system" and either (A) "[e]xtensive brawny edema . . . involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip," or (B) "[s]uperficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment."[24]

Here, the ALJ considered Listing 4.11 and, citing eight medical records as examples, found neither component (A) nor (B) were met because Plaintiff's "edema was often described as mild, trace, non-pitting, without open wounds (ulcerations), and many times there was no edema present on exam."[25]

---

[24] 20 C.F.R. pt. 404, subpt. P, App. 1, § 4.11.

[25] AR 22 (citing AR 479, 482, 555, 745, 767, 774, 788, 1412).

Substantial evidence supports the ALJ's non-conclusory reasons. The ALJ accurately cited and explained medical records that established presentations of edema, but there is no evidence of edema in at least one-third of the leg or ulcerations failing to heal following at least three months of treatment.[26]

*b. Listing 8.09, Chronic conditions of the skin*

Listing 8.09 requires both (A) "[c]hronic skin lesions . . . or contractures . . . causing chronic pain or other physical limitation(s) that persist despite adherence to prescribed medical treatment for 3 months," and (B) "[i]mpairment-related functional limitations . . . demonstrated by" an inability to use both upper extremities, an inability to use one upper extremity and the need for an assistive device for the other, an inability to stand, or the inability to stay upright when standing or walking.[27]

Here, the ALJ considered Listing 8.09 and, citing three medical records as examples, found the record did not support the degree of

---

[26] *See* AR 479, 482, 555, 745, 767, 774, 788, 1412.

[27] 20 C.F.R. pt. 404, subpt. P, App. 1, § 8.09.

impairment required by the listing because "[r]ange of motion in her hands is largely maintained, she does not require the use of an assistive device, and she is able to ambulate with a normal gait and sit with normal posture."[28]

Substantial evidence supports the ALJ's non-conclusory reasons. The ALJ accurately relied on evidence showing that although Plaintiff had skin lesions, she did not have one of the listing's required severe motor inabilities.[29]

*c. Listing 11.14, Peripheral neuropathy*

Listing 11.14 requires peripheral neuropathy characterized by either (A) "[d]isorganization of motor function in two extremities . . . resulting in an extreme limitation . . . in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities," or (B) marked limitation in physical functioning and in one category of mental functioning.[30]

---

[28] AR 22 (citing AR 788, 1044, 1190).

[29] *See* AR 788, 1044, 1190.

[30] 20 C.F.R. pt. 404, subpt. P, App. 1, § 11.14

Here, the ALJ did not consider Listing 11.14, which is appropriate on this record because Plaintiff did not present evidence or argument for the peripheral neuropathy listing.[31] Moreover, there is no diagnosis or evidence of peripheral neuropathy or any other neurological disorder that would oblige the ALJ to consider equivalence with Listing 11.14.

*d. Listings 12.04, 12.06, 12.15, Mental disorders*

Listings 12.04 (bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders) may be satisfied by either the "paragraph B" or the "paragraph C" criteria.[32] Paragraph B provides that the claimant must have "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning": (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or

---

[31] *See Burch*, 400 F.3d at 683; AR 50–51 (arguing for Listings 4.11 and 8.09 but not 11.14).

[32] 20 C.F.R. pt. 404, subpt. P, App. 1, §§ 12.04, 12.06, 12.15.

maintain pace; and (4) adapt or manage oneself.[33] Paragraph C requires "a medically documented history of the existence of the disorder over a period of at least 2 years," and evidence of both ongoing medical treatment and minimal capacity to adapt to changes.[34]

Here, the ALJ, citing several mental health treatment records, found Plaintiff did not meet the mental disorder listings because she had only mild or moderate impairments in the paragraph B criteria and did not have only minimal capacity to adjust to changes under paragraph C.[35] Substantial evidence supports the ALJ's non-conclusory findings because several mental health treatment notes indicate average to above average intelligence, intact memory, cooperative and engaged behavior, good concentration, adequate hygiene, and good grooming.[36] In further support, Plaintiff testified to caring for her

---

[33] *Id.* §§ 12.04(B), 12.06(B), 12.15(B).

[34] *Id.* §§ 12.04(C), 12.06(C), 12.15(C).

[35] AR 22–23.

[36] *See, e.g.*, AR 1228–43, 1261, 1264, 1288.

children even though she requires assistance from them, performing some short-term work, and attending college online.[37]

**C. Medical Opinion: Plaintiff establishes consequential error.**

Plaintiff contends substantial evidence does not support the ALJ's reasons for rejecting Ms. Phillips' opinion and that the ALJ did not evaluate the opinion's consistency or supportability. Plaintiff contends that Ms. Phillips' disabling opinion is consistent with the longitudinal record. As is explained below, substantial evidence does not support the ALJ's rejection of Ms. Phillips' 2025 mental-health opinion.

1. Standard

The ALJ must consider and articulate how persuasive he found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[38] The factors for evaluating the

---

[37] AR 58–60.

[38] 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[39] Supportability and consistency are the most important factors.[40] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[41]

2. Sarah Phillips, LICSW

On September 27, 2023, Ms. Phillips, Plaintiff's treating mental health care provider, completed an evaluation form for the State Department of Social and Health Services.[42] On it, Ms. Phillips noted the following: (1) Plaintiff has unresolved PTSD, as supported by progress notes and diagnosis; (2) Plaintiff has impairments in social and occupational functioning, with problems with concentration and focus, severe anxiety when PTSD is triggered, lack of coping skills,

---

[39] 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

[40] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

[41] *See Burrell*, 775 F.3d at 1138.

[42] AR 691–93.

emotion dysregulation, and mood instability; (3) Plaintiff should be limited to 21–30 hours of work per week; (4) Plaintiff has lifting and carrying restrictions and should be limited to sedentary work; (5) Plaintiff missed or was late to a few appointments and has difficulty getting up in the morning; and (6) Plaintiff's PTSD would limit her ability to work until her trauma was resolved.[43]

On September 2, 2025, Ms. Phillips completed a mental RFC assessment form on which she noted the following in checkboxes: (1) Plaintiff had marked or severe limitations in 17 mental work abilities; (2) Plaintiff had marked limitation in interacting with others and severe limitations in the other paragraph B criteria; (3) Plaintiff met the paragraph C criteria; (4) Plaintiff would be off task 21-30% of the time; and (5) Plaintiff would likely miss 4 or more days of work each month.[44] In narrative form, Ms. Phillips wrote:

> [Plaintiff] has appeared to struggle mentally since 2023 with the diagnosis of orbital cellulitis in her eye and her diagnosis of cellulitis in 2024. She is currently working on processing past complex trauma. She has not been able to

---

[43] AR 691–93.

[44] AR 1481–84.

> work due to the negative ruminating cognitions that have been a result of multiple traumas in her past. She has been experiencing recurrent episodes of open sores/ulcers that stem from her cellulitis, which impact her leaving her apartment until they fully heal. She reported it can take up to months for one sore to heal.[45]

The ALJ found Ms. Phillips' 2023 opinion not persuasive, first because her statement that Plaintiff cannot work until her trauma is resolved was an inherently unpersuasive statement on an issue reserved to the Commissioner.[46] The ALJ also found Ms. Phillips' sedentary-work opinion "not persuasive because it is outside of her area of expertise and not consistent with the largely unremarkable physical exam findings detailed above."[47]

The ALJ also found Ms. Phillips' 2025 opinion not persuasive.[48] The ALJ explained that Ms. Phillips' written comments addressed Plaintiff's physical impairments more than her mental symptoms and

---

[45] AR 1484.

[46] AR 26.

[47] AR 26.

[48] AR 26.

treatment.[49] The ALJ also found Ms. Phillips' opined limitations "inconsistent with [Plaintiff's] high functioning activities of daily living. She has been able to work, attend college online, and care for her children since the alleged onset date."[50]

3. Analysis

The ALJ discussed the supportability and consistency factors for both of Ms. Phillips' opinions. In addition, the ALJ rationally discounted Ms. Phillips' physical-health opinions as not supported by her own mental-health treatment. Further, Ms. Phillips' 2023 opinion contained a general statement that Plaintiff was unable to work, which the ALJ correctly determined is an inherently unpersuasive statement on an issue reserved to the Commissioner.

However, substantial evidence does not support the ALJ finding Ms. Phillips' 2025 mental-health opinion not persuasive. First, it is not clear whether the ALJ considered Ms. Phillips' checkbox findings or rejected them simply because they were checkbox findings. The ALJ

---

[49] AR 26.

[50] AR 26.

said, "First, I note that the comments in the check-box form address her physical impairments more than her psychological symptoms and mental health treatment. These limitations are also inconsistent with her high functioning activities of daily living."[51] According to the ALJ's wording, therefore, the ALJ only considered and rejected Ms. Phillips' written statement for pertaining to physical health and being inconsistent with Plaintiff's activities. But this says nothing about Ms. Phillips' exclusively mental-health opinions given in checkboxes in the rest of the form, leaving doubt as to whether the ALJ considered them.

Next, although an ALJ may permissibly reject a conclusory checkbox opinion that does not offer any explanation for its limitations,[52] if treatment notes are consistent with the opinion, a

---

[51] AR 26.

[52] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory and inadequately supported); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

checkbox opinion may not automatically be rejected.[53] Here, the ALJ did not say, and his decision does not demonstrate, that he rejected Ms. Phillips' mental-health checkbox opinions as unsupported by her treatment records. The ALJ considered Ms. Phillips' treatment notes when analyzing whether Plaintiff met a listing, but this analysis was limited to whether Plaintiff met the paragraphs B or C criteria, not the broader issue of Plaintiff's RFC.[54] The ALJ also considered that Ms. Phillips' mental health treatment was related to certain life stressors, past trauma, and drug abuse, but again, this says nothing about whether Ms. Phillips' opinion was supported by her treatment notes.[55] Further, the ALJ considered Ms. Phillips' treatment notes when finding the reviewing psychological medical consultants' opinions persuasive in part because Plaintiff "was noted to be emotional,

---

[53] *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) (recognizing that the ALJ is to consider whether treatment notes are consistent with the checkbox opinion).

[54] *See* AR 22–23.

[55] *See* AR 25.

disorganized, and distracted at times, but otherwise presented as cooperative and engaged."[56] Even under the modest standard for what constitutes substantial evidence, this reasoning would not be adequate to reject Ms. Phillips' opinion. Accordingly, the ALJ erred by not considering whether Ms. Phillips' 2025 mental-health opinion was supported by her treatment notes.

This error impacted the RFC determination. Therefore, this case must be remanded, and, on remand, the ALJ must (1) consider whether Ms. Phillips' 2025 mental-health opinion, though presented in checkbox form, is supported by her treatment notes, and (2) reevaluate the persuasiveness of the opinion based on its supportability and consistency with the overall record.

**D. Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for discounting her physical symptom reports. The Court agrees.

---

[56] AR 27.

1. Standard

If an ALJ assesses severe impairments and does not find any evidence of malingering, the ALJ can discount the claimant's testimony about the severity of her impairments only "based on clear and convincing reasons."[57] The "clear and convincing" standard is "the most demanding standard under [Ninth Circuit] precedent. It requires that the ALJ provide more than general findings, identify what testimony is not credible, and identify what evidence undermines that testimony. The ALJ must also state a rationale clear enough that it has the power to convince."[58]

2. Plaintiff's testimony

Plaintiff testified that she suffers from chronic and recurring cycles of swelling, pain, and discoloration in her legs and feet, which

---

[57] *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) (citation modified).

[58] *Collard v. Bisignano*, No. 25-6334, --- F.4th ----, 2026 WL 2856741, at *2 (9th Cir. Sept. 23, 2026) (citation modified).

she attributes to cellulitis.[59] She said the swelling requires her to spend half the day with her legs elevated above heart level.[60] She also testified to once having orbital cellulitis causing her eye to swell.[61] She also testified that she suffers open, leaking ulcerations on her arms, legs, and hands.[62] She said the lacerations require cleaning and dressing multiple times per day and, along with carpal tunnel syndrome, causes numbness and difficulties using her hands.[63] She testified that her impairments also give her severe fatigue, cause mental distress, prevent her from leaving the house several days a week, and make her reliant on her children for her personal hygiene and the performance of household chores.[64] She said her impairments prevented her from working on a sustained, regular basis because she

---

[59] AR 60–64, 68–71.

[60] AR 59–60, 68–69.

[61] AR 61–62.

[62] AR 63, 71–76.

[63] AR 61, 71–76.

[64] AR 71–73.

had problems lifting items and missed too much work.[65] She testified that she is enrolled in college courses, which she takes online and uses voice-to-note notetaking software due to her impairments.[66]

3. <u>ALJ's reasons, and analysis thereof</u>

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her "medically determinable impairments . . . not fully supported prior to January 8, 2025."[67] The ALJ then summarized several medical records which, according to the ALJ, showed the following: Plaintiff's initial treatment for cellulitis on her face in February 2023 was successful with no resulting physical limitations; bilateral leg swelling was only mild in April 2023; she was able to briefly work as a child monitor and as a gas station cashier; she had non-pitting lower-extremity edema and mild non-pitting edema of the hands in August 2023 with normal neurologic findings; treatment for bilateral lower extremity swelling and dull throbbing pain after

---

[65] AR 53–55, 76–78.

[66] AR 58–59, 73–74.

[67] AR 24.

standing in October 2023 did not include a recommendation to elevate her legs, and there was no evidence of cellulitis on exam; she underwent a myriad of largely unremarkable tests for lower extremity edema; there was evidence of methamphetamine use during the relevant period; in January 2024, the swelling in Plaintiff's feet and ankles was worse than swelling in the distal half of the legs; Plaintiff once declined a referral to wound care for two ulcerative wounds in her leg; Plaintiff suffered an acute injury to her knee and hands in March 2024 with mild to normal physical examination findings; and Plaintiff presented with skin-picking lesions in September 2024 with no edema, no remarkable physical exam findings, and good range of motion in all joints.[68]

Here, the ALJ's explanation is an inadequate recitation of a selective chronology of medical records. While objective medical evidence is a relevant factor for the ALJ to consider when assessing a

---

[68] AR 24–26.

claimant's symptoms,[69] the ALJ must do more than recite a chronology of the medical records to justify whatever RFC restrictions the ALJ deems consistent with the objective medical evidence. The ALJ must specify *why* the objective medical findings are inconsistent with Plaintiff's symptom reports.[70]

The Court can discern why the ALJ rejected Plaintiff's specific testimony that she needed to elevate her legs throughout the day. The ALJ reported such testimony and noted that the provider who treated Plaintiff for bilateral lower extremity edema in October 2023 did not mention the need to elevate her legs.[71] The ALJ noted one provider's

---

[69] 20 C.F.R. §§ 404.1502(f), 416.902(k); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[70] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Burch*, 400 F.3d at 680.

[71] AR 24–25, 699.

advice in August 2023 to "elevat[e] as much as able,"[72] and the remainder of the ALJ's summary of the medical records does not mention Plaintiff elevating her legs. Therefore, the ALJ's conclusion is clearly based on the ALJ finding an overall lack of medical providers' instructions for Plaintiff to elevate her legs.

The same is not true, however, with respect to Plaintiff's other specific testimony, among other complaints, that she has problems grasping and lifting objects, that her impairments in combination prevent her from leaving her house for days at a time, that her limitations caused her to lose jobs for missing too much work, and that her symptoms require her children to assist her with housework. The ALJ's summary of the medical records, even though it describes medical findings as to cellulitis and edema, does not "build an accurate and logical bridge" from the evidence to the ALJ's conclusions as to those parts of Plaintiff's testimony.[73] The ALJ's reasons, therefore, are not clear and lack the power to convince on this record.

---

[72] AR 25, 769.

[73] *See Blakes*, 331 F.3d at 569.

On remand, the ALJ shall reevaluate Plaintiff's testimony according to the Ninth Circuit's clear-and-convincing standard. If the ALJ rejects Plaintiff's testimony based on lack of support in the medical records, the ALJ must specifically identify which records undermine Plaintiff's specific testimony and explain why. The Court further notes that an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain," but may discount subjective complaints that are *inconsistent* with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the claimant's complaints.[74]

**E. Step Five: The issue is moot.**

Finally, Plaintiff's argument that the ALJ did not meet his step-five burden merely repackages Plaintiff's arguments, already addressed, as to why substantial evidence does not support the RFC. The standalone step-five challenge, therefore, is moot.

---

[74] *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3d at 680 (emphasis added in *Smartt*)).

## IV. Conclusion

Plaintiff establishes the ALJ consequentially erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support consistent with this Order—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision for the period before January 8, 2025, is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 11**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 4th day of November 2026.

EDWARD F. SHEA
Senior United States District Judge